[NOT FOR PUBLICATION]                                    [Doc. No. 74]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

LARRY BUMGARNER,

        Plaintiff,

    v.                                   Civil No. 05-3900 (RMB)

JANE ANN HART, et al.,                       **OPINION**

        Defendants.

LARRY BUMGARNER,

        Plaintiff,

    v.                                   Civil No. 06-142 (RMB)

CITY OF ATLANTIC CITY, et al.,

        Defendants.

Appearances:
    Larry Bumgarner
    205 Toulon Ave.
    Egg Harbor Township, NJ 08234
        Plaintiff, pro se

    Maureen Caryn Shay
    Fox Rothschild LLP
    1301 Atlantic Avenue
    Suite 400
    Atlantic City, NJ 08402
        Attorney for Defendants, Jane Ann Hart and JAH Meeting
        Planners, Inc.

1

Gary A. Devito
Zarwin, Baum, Devito, Kaplan, Shaer & Toddy, PC
Five Greentree Centre
Suite 105
Marlton, NJ 08053
    Attorney for Defendant, City of Atlantic City

Thomas B. Reynolds
Reynolds, Drake, Wright & Marczyk
29 North Shore Road
Abescon, NJ 08201
    Attorney for Defendant City of Brigantine

Louis J. Nieldelman
Cooper Levenson
1125 Atlantic Avenue
Third Floor
Atlantic City, NJ 08401

Carmelo T. Torraca
Cooper Levenson
1125 Atlantic Avenue
Third Floor
Atlantic City, NJ 08401
    Attorneys for Defendants, Mary Ann Benianati, Rona
    Zucker Kaplan, Alan I. Kalb, and Cooper Levenson April
    Niedelman & Wagenheim, P.A.


**BUMB**, United States District Judge:

    This matter comprises two consolidated dockets each representing a Complaint filed by Plaintiff, pro se, Larry Bumgarner.  Under the initial docket, number 05-3900, Bumgarner filed a Complaint alleging contract and intellectual property claims based on his work for, and dismissal from, JAH Meeting Planners, Inc., ("JAH").  Bumgarner filed a second Complaint, number 06-142, which has been consolidated under this docket.  [Doc. 05-3900, No. 56].  In that Complaint, Bumgarner alleges his constitutional rights were violated when JAH principal Jane Ann

Hart, with the assistance of her counsel at the firm of Cooper Levenson April Niedelman & Wagenheim, P.A. ("Cooper Levenson"), manipulated the courts and local police to repossess a vehicle that Bumgarner alleges was a part of his compensation package from JAH.  In an Order dated February 2, 2007, this Court dismissed that Complaint.  [Doc. 05-3900, No. 72].  Bumgarner now asks this Court to reconsider that Order.

For the reasons discussed below, this Court will vacate its Order of February 2, 2007.  Plaintiff will be permitted to file an Amended Complaint and Plaintiff's claims filed under number 06-142 will be dismissed in part.  All remaining claims and Defendants will be consolidated on the original docket, number 05-3900.  The docket number 06-142 will remain closed.

I. Statement of Facts

There are few facts in this matter that are not heavily contested.  The vast majority of the facts provide only background to the facts central to the issues before the Court in this motion. Thus they will only be recounted briefly.  Central to resolution of the pending motion are the facts surrounding the seizure by Hart of Plaintiff's vehicle, which will be discussed more thoroughly. Plaintiff seeks reconsideration of an Order granting Defendants summary judgment.  Accordingly, the facts will be construed in a light most favorable to Plaintiff,

3

originally the non-moving party.

Plaintiff began working for Hart's company, JAH, on August 8, 2001, and alleges that Hart promised to make him an equal partner and half owner of the business "in return for his talents and services." (Plaintiff's Complaint in Doc. 05-3900 ("Compl.") at ¶ 9).  However, on November 2, 2001, Hart and Bumgarner's professional relationship ended.  (Id. at ¶ 10.) Sometime between the winter of 2001 and the winter of 2002 Plaintiff claims he resumed working for JAH.  (Id. at ¶ 11-14.) During this period, Plaintiff claims he "computerized" JAH, which included creating a website, a bookkeeping system, and developing certain organizational databases.  (Id. at ¶ 13).  Plaintiff also alleges he created stationery and marketing materials for JAH, made sales calls to potential JAH clients, some of whom he researched independently, and created websites for JAH clients. (Id.)  Throughout this period, Plaintiff claims he proposed numerous employment contracts on behalf of himself to Hart, none of which she accepted.  (Id. at ¶ 12.)

In exchange for his work, Plaintiff claims that Hart promised to make him an equal partner in JAH and give him half of the property he helped her purchase.  (Id. at ¶ 17).  Plaintiff also claims that as compensation for his work he accepted Hart's offer of $800 per month and indefinite use of a 2003 Nissan Pathfinder leased to JAH and Hart. (Id. at ¶ 22).  He alleges

4

that Hart agreed to pay for the cost of fuel for the Pathfinder, and promised him use of the vehicle and continued payment as long as JAH retained Charter as a client. (Id.).  Plaintiff alleges that as part of this compensation arrangement he agreed to give his personal automobile to Hart, "who donated it to an organization" and took a tax deduction for its value. (Id.).

On or about July 9, 2005, Plaintiff claims Hart informed him she would not be paying Plaintiff a commission he alleges she promised as additional compensation for his work. (Id. at ¶ 25). Over the next few weeks the business relationship between Plaintiff and Hart deteriorated and Hart certifies that Plaintiff "ceased working for JAH [] as of July 15, 2005." (Nov. 4, 2005 Certif. of Hart at ¶ 8 [Doc. 06-142, No. 51-3]).

On July 25, 2005, Plaintiff served Defendant Hart, and others, a "Notice of Claimed Copyright Infringement" and a "Cease and Desist Notification," listing forty-two web pages, forms, and database files over which Plaintiff alleged ownership.  (Doc. 05-3900, Compl. at ¶ 41).  On July 26, 2005, Hart, though her attorney, informed Plaintiff that any work he created for JAH in his capacity as a JAH employee belonged to JAH, and further demanded that Plaintiff return the 2003 Pathfinder she had allowed him to use during the course of his employment with JAH. (Letter from Alan I. Kalb, Compl. at Ex. C; see also Nov. 4, 2005 Certif. of Hart at ¶ 10).

On August 5, 2005, Plaintiff filed a Complaint alleging copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. § 101, et. seq., and the Digital Millennium Copyright Act, 17 U.S.C. § 512. (Doc. 05-3900, Compl at ¶ 1, 6-8, 46-58).

On September 13, 2005, Hart issued Plaintiff an ultimatum: return the Pathfinder or assume responsibility for the lease payments and insurance premiums by September 19, 2005; Plaintiff responded that he would not return the car.  (City of Brigantine's Br. in Support of Summary Judgment, Ex. G (Hart Stmt. to City of Brigantine Police Department) [Doc. 06-142, No. 34-3 at 25]).  The record is silent on whether, in light of Bumgarner's decision to retain possession of the Pathfinder, Hart attempted to transfer responsibility for the lease payments and insurance premiums to Bumgarner.  However, the record does indicate that on September 19, 2005, Hart filed an Answer to Plaintiff's Complaint and a Counterclaim in this Court seeking an order compelling Plaintiff to turn over to them the 2003 Pathfinder, and asserting a claim for tortious interference with their business relationships.  [Doc. 05-3900, No. 9].  On the advice of counsel, Hart attempted to speed the recovery of the Pathfinder through what is alleged as blatant forum shopping, and reported the Pathfinder stolen.  (City of Brigantine's Br. in Support of Summary Judgment, Exs. G & H [Doc. 06-142, No. 34-3 at 25, 26]).  Hart statement to the City of Brigantine Police

Department did not disclose that the Pathfinder was currently the subject of litigation pending in this Court.  (Id.).

The Municipal Court of Brigantine issued a summons to Bumgarner to appear at a hearing on November 17, 2007.  (Id. at Ex. C [Doc. 06-142, No. 34-3 at 13]}.  The Municipal Court did not issue a warrant to seize the car.  According to Hart, the Brigantine Police instructed Hart that she was entitled to repossess the 2003 Pathfinder if she discovered its location. (Hart Cert. at ¶ 18-19).  On November 7, 2005, Hart saw the 2003 Pathfinder in the parking lot of Harrah's Hotel and Casino in Atlantic City.  (Id. at ¶ 20-21).  Hart contacted the Atlantic City Police, who dispatched officers to meet her at Harrah's. (Id. at ¶ 21).  Hart showed the police officers and Harrah's security guards the summons issued by the Municipal Court of Brigantine, and the casino security guards went into the casino to retrieve Plaintiff.  Id. at ¶ 22-23.  Plaintiff eventually emerged and turned over the keys to Hart, who took possession of the vehicle.  Later, Hart inventoried the contents of the Pathfinder she believed to belong to Plaintiff and provided that list to her attorneys.  (Id. at ¶ 24-25).

On January 11, 2006, Plaintiff filed a second Complaint in this Court alleging eleven counts of various constitutional violations.  This Complaint was docketed as number 06-142.  The substance of Plaintiff's Complaint is that the interested parties

7

lied under oath at the Municipal Court's probable cause hearing, that the attorneys involved encouraged such behavior, and that the police officers involved in the seizure of the automobile deprived Plaintiff of certain Constitutional rights.  Plaintiff named as Defendants, Hart's attorneys at the law firm of Cooper Levenson April Niedelman & Wagenheim, P.A. ("Cooper Levenson"), Mary Ann Benianati, Rona Zucker Kaplan, Alan I. Kalb, the firm itself, (collectively the "Cooper Levenson Defendants"), Hart, JAH, the City of Brigantine, the City of Atlantic City, and two unidentified Atlantic City Police Officers.

On November 11, 2006, docket 06-142 was consolidated with the earlier Complaint filed on docket 05-3900.  [Doc. 06-142, No. 53].  In February 2007, the Court addressed several motions for summary judgment filed by Defendants.  After a hearing, the Court concluded that Plaintiff's claims based on the seizure of the Pathfinder were barred by collateral estoppel.  That is, Judge Wolfson's conclusion that the seizure was made upon probable cause estopped Plaintiff from bring claims that asserted otherwise.  (Order of February 2, 2007 [Doc. 05-3900, No. 72]). Plaintiff now seeks reconsideration of that Order.

Finally, the Court notes that there are pending summary judgment motions that have been filed in number 05-3900.  These include a motion for summary judgment by Defendant Dandy.net, [Doc. 05-3900, No. 80], and a motion for summary judgment by

Defendants Hart, and JAH, [Doc. 05-3900, No. 88].  The Court will address these motions separate from the instant motion.  The Court must address, however, some recent correspondence it received from Plaintiff Bumgarner in connection with these motions.

On March 10, 2007, Plaintiff apparently responded to Dandy.net's motion, which was filed in February 2007.  While Plaintiff did serve Defendants with his opposition he did not file a copy with the clerk of this Court.[1]  The Court became aware of Plaintiff's opposition only when Defendants referred to it in their submissions.  The Court, having not received Plaintiff's opposition, attempted to reach Plaintiff via telephone but the number Plaintiff has provided to the Clerk's office was incorrect.  The Court then contacted Plaintiff via e-mail on May 30, 2007, but received no response.  The Court finally obtained a copy of Plaintiff's opposition from Defendants via e-mail on June 6, 2007.

Just as the Court was preparing to file this Opinion and accompanying Order, the Court received a reply e-mail from Plaintiff that stated, in its entirety:

---

[1]    It was later discovered that Plaintiff had submitted his opposition to Magistrate Judge Joel Schneider, the Magistrate Judge assigned to this case.  Because all papers are to be filed with the clerk of the Court, Local Civil Rule 7.1(d)(1), with only a courtesy copy provided to chambers, Local Civil Rule 7.1(g), Plaintiff's submission was never docketed.

> It was sent.  It's there in a big pile of paper because
> only the lawyers have access to the computer system.
> It doesn't really matter.  She doesn't read them
> anyway.  This I witnessed at my oral hearing.  I spent
> 30 hours on it and she hadn't read it.  She's only
> going to rubber stamp whatever the lawyer says anyway.
> I'm sending a dismissal of the defendants in the mail.
> It explains everything.

It is regrettable that Plaintiff believes the Court does not read his submissions and "rubber stamp[s]" the Defendants' positions. The Court is compelled to note, however, that Plaintiff's comments have not had an affect on this Court's written Opinion and accompanying Order and certainly did not influence its decision in anyway.  Moreover, to the extent Plaintiff seeks to dismiss his cases against Defendants, the Court will address that issue at the appropriate time.

II.  Analysis

Defendants moved initially for summary judgment on a host of grounds.  The most enthusiastic argument Defendants advanced was based on Judge Wolfson's Order of June 21, 2006, [Doc. 05-3900, No. 41], that found that there was probable cause to seize the Nissan Pathfinder.  The Defendants argued that this finding bars Plaintiff's claims that the seizure was unlawful.  Plaintiff disputed this in both his submission and at argument, claiming that Judge Wolfson's finding was predicated on the erroneous assumption that Plaintiff was an employee; an assumption Plaintiff claims he can now dispute with evidence.

Indeed, Plaintiff is convinced that the question of the legality of the seizure of the Pathfinder turns upon only the question of whether he was an employee or a subcontractor. However, the exact contours of the relationship between Plaintiff and Defendant JAH are irrelevant at this stage of the proceedings: Whether or not Plaintiff had an indefinite contractual right to the car is the ultimate issue of the contract claims raised in the Complaint filed in No. 05-3900 and will be addressed at the appropriate time.  The motion for reconsideration currently before the Court concerns the Complaint in No. 06-142 only: Whether Plaintiff asserts valid claims against the Defendants based on the manner in which the car was seized.  Because of Plaintiff's singular focus on the nature of his employment relationship with JAH and his ultimate right to possession of the car the Court concluded that Plaintiff's claims that his constitutional rights were violated were preempted by Judge Wolfson's Order that found that the car was lawfully seized.  (Doc. 05-3900, No. 41 at ¶ 13). Plaintiff seeks a reconsideration of this conclusion.

Plaintiff filed his motion under Federal Rule of Civil Procedure 60(b), which permits motions seeking relief from a judgment or order.  This Court's Local Rules provides for a motion for reconsideration to address issues and facts that are overlooked during the original motion.  L. Civ. R. 7.1(i), <u>United</u>

States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994).  Plaintiff
continues to press the point that Judge Wolfson overlooked the
fact that he was not an employee of JAH.  This is still
irrelevant to the discrete question before the Court.  However,
Plaintiff's argument that Judge Wolfson's conclusion that he was
an employee of JAH is an erroneous finding of fact does highlight
an error made during this Court's consideration of Defendants'
motions for summary judgment.  Namely, that Judge Wolfson's Order
did not contain findings of fact but rather, the Order viewed the
facts in the light most favorable to the Defendants as the non-
moving party.

    In the first Complaint, No. 05-3900, Plaintiff asserted a
right to indefinite use and possession of the car.  (Doc. 05-
3900, Compl. at ¶ 22).  Shortly thereafter Plaintiff filed three
motions seeking miscellaneous relief not provided for by the
Federal Rules of Civil Procedure.  See Doc. 05-3900, No. 41 at ¶¶
8, 12, 21.  Judge Wolfson treated Plaintiff's submissions as ones
seeking ultimate resolution on his claims.  Accordingly, Judge
Wolfson interpreted Plaintiff's pro se pleadings liberally, id.
at ¶ 8 (citing Haines v. Kerner, 404 U.S. 519, 520 (1972), and
Alston v. Parker, 363 F.3d 229, 234 (3d Cir. 2004)), but accepted
the facts, undisputed or otherwise, in the light most favorable
to the non-moving party, see Hunt v. Cromartie, 526 U.S. 541, 552
(1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

255 (1986)).

Judge Wolfson noted that Plaintiff did not provide any
support on the merits of his claims.  (Doc. 05-3900, No. 41 at ¶¶
8-9).  Judge Wolfson then found that, at the time, it was
undisputed that the car was leased to Hart and JAH and that the
Brigantine Court had "concluded that probable cause existed to
support Hart's allegation that Plaintiff was in possession of,
and operating, the 2003 Pathfinder without Hart's permission . .
. ."  Id. at ¶ 9.  Judge Wolfson then concluded that this
evidence indicated that the car was lawfully repossessed and
denied Plaintiff's motion for judgment.  Id.

Based on these conclusions Defendants moved for summary
judgment arguing, among other things, that the Order collaterally
estopped Plaintiff from bringing his constitutional claims in
number 06-142.  "Collateral estoppel, also known as issue
preclusion, prevents relitigation of a particular fact or legal
issue that was litigated in an earlier action."  Seborowski v.
Pittsburgh Press Co., 188 F.3d 163, 169 (3d Cir. 1999).  A party
is collaterally estopped from relitigating a fact or issue if,
the issue is identical to one decided in an earlier action; there
is a final judgment on the merits; and the estopped party had a
full and fair opportunity to litigate the issue in the prior
action.  Id.  It is apparent now that the Order, unambiguous as
it was, was not a final ajudication on the merits of either

parties' claims.  Judge Wolfson's Order was a conclusion, in the face of Plaintiff' motions, that final judgment on the merits would have to wait.  Accordingly, the Order cannot collaterally estop Plaintiff from asserting his claims in the number 06-142 Complaint.

Plaintiff responded to the argument that Judge Wolfson's Order foreclosed his claim based on the seizure of the car with the sole argument that Judge Wolfson erred by concluding he was an employee of JAH.  Satisfied that the nature of the business relationship between Plaintiff and JAH was irrelevant to the propriety of the seizure, this Court overlooked the fact that the Order was not a final ajudication on the merits of the claims Plaintiff asserted in the 06-142 Complaint.

Now, by virtue of the parties' submissions in number 06-142, there is evidence that there are material facts in dispute about the propriety of the seizure.  First and foremost, the series of events giving rise to Plaintiff's Complaint in number 06-142 - the filing of the Counterclaim in number 05-3900 seeking return of the car, and Hart and JAH's obvious forum shopping by filing in the municipal court that same day - raises a genuine issue in dispute as to the conduct of Hart, JAH, and their counsel in their dealings with both this Court and the municipal court. Second, the scope of authority issued by the municipal court to Hart, JAH, and their counsel -  a summons does not authorize the

14

seizure of property under New Jersey law - raises a genuine issue in dispute as to whether the Defendants intentionally went beyond that authority.  Accordingly, for this reason and those discussed below this Court will vacate its Order of February 2, 2007, [Doc. 05-3900, No. 72].  Plaintiff's claims and Defendants' alternative arguments for summary judgment will now be discussed in turn.

Plaintiff's initial Complaint in number 06-142 raised a litany of claims under federal civil and criminal statutes and under the U.S. Constitution and the Declaration of Independence. Construing the pro se complaint liberally so as to do substantial justice and arrive at what rights Plaintiff truly wants to vindicate, see Alston v. Parker, 363 F.3dd 229, 234 (3d Cir. 2004), the Court concludes that Plaintiff intends to assert a claim against the named Defendants for the seizure of the car brought under 42 U.S.C. § 1983 and Plaintiff's Fourth Amendment right to be free from unreasonable seizures.  This conclusion is consistent with Plaintiff's submissions and his statements at oral argument on Defendants' motions for summary judgment. (Hearing Transcript of Feb. 2, 2007 [Doc. 05-3900, No. 87]).

Defendants Atlantic City, and presumptively Defendants John Miller and Mark Pizzutillo if the Amended Complaint is accepted, see infra at 22-24, requested summary judgment on the grounds of collateral estoppel and, in the alternative, dismissal for failure to state a claim.  For the reasons discussed above,

15

namely that Judge Wolfson's Order was not a final Order on the merits, collateral estoppel is not a grounds on which this Court may grant Defendants summary judgment.  Defendants' other argument warrants further discussion.

When these motions were filed discovery had not been completed.  (See Doc. 05-3900, No. 82 (setting discovery deadline as April 30, 2007); Doc. 06-142, No. 52 (setting deadline for written discovery as December 13, 2006 and setting no deadline for deposition and other fact witness discovery).  Accordingly, because the parties did not have the benefit of a full record the applicable standard of review is that for a motion to dismiss.

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, the allegations contained in the complaint will be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322 (1972).  Moreover, the plaintiff will also be "given the benefit of every favorable inference that can be drawn from those allegations."  Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991).  Pro se complaints in particular will be construed so as to do substantial justice; a short plain statement is often all that is required.  Alston v. Parker, 363 F.3d 229, 234 (3d Cir. 2004).  Thus, so long as the plaintiff pleads sufficient factual allegations and does not rely on conclusory recitations of law, dismissal will be inappropriate.  Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173,

16

179 (3d Cir. 1988).

Defendant Atlantic City argues that Plaintiff fails to state a claim but neglects to identify how.  That is, the Defendant recites the facts but does not identify what the elements of Plaintiff's claim are; does not identify what element Plaintiff fails to plead or state; and does not cite a single statutory or decisional piece of law in support of the blanket statement that Plaintiff fails to state a claim.

42 U.S.C. § 1983, permits claims against anyone who, under color of state law, deprives a person of their constitutional rights.  The Fourth Amendment protects against unreasonable seizures.  U.S. Const. amd. IV.  The Supreme Court has held that "meaningful interference with an individual's possessory interest in that property" amounts to a seizure.  Brown v. Muhlenberg Township, 269 F.3d 205, 209 (3d Cir. 2001) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)).  The seizure of property without a warrant issued upon probable cause is per se unreasonable.  Id. (quoting United States v. Place, 462 U.S. 696, 701 (1983)).  Accordingly, if Plaintiff has pled facts that Defendants, under color of state law, interfered with his possessory interest in the Pathfinder without a warrant issued on probable cause, then he states a claim for an unreasonable seizure in violation of his Fourth Amendment rights.

Defendants do not dispute that they are state actors whose

17

actions are taken under color of state law.  Plaintiff pled in
both Complaints that he had an indefinite possessory interest in
the Pathfinder, (Doc. 05-3900 Compl. at ¶ 22; Doc. 06-142 Compl.
at ¶ 12).  Plaintiff also pled that the seizure was a meaningful
interference with that possessory interest because it deprived
him of all use of the Pathfinder.  (Doc. 06-142 Compl. at ¶ 13).
Finally, it is undisputed that the seizure was made without a
warrant.  (See, e.g., Doc. 06-142, No. 37-2 at ¶ 17
(Certification of Jane Ann Hart)).  Although Defendants JAH and
Hart possessed a summons, id., a summons is not a warrant, see,
e.g., N.J. Court Rule 3:3-1 (setting forth requirements for
summons versus a warrant with heightened requirements before a
warrant will be issued), and without a warrant the seizure is
presumptively unreasonable, Brown, 269 F.3d at 209.  Plaintiff
has stated a claim for an unreasonable seizure in violation of
his Fourth Amendment rights.  Accordingly, Defendant Atlantic
City will be denied judgment on this ground.

Defendant City of Brigantine sought dismissal based on three
grounds, the first being collateral estoppel.  For the reasons
discussed above, namely that Judge Wolfson's Order was not a
final Order on the merits, collateral estoppel is not a grounds
on which this Court may grant Defendants summary judgment.
Defendants City of Brigantine also seeks dismissal on the grounds
that Plaintiff has not pled any facts that would support

18

municipal liability.

As already discussed, Plaintiff has stated a claim for the violation of his Fourth Amendment rights.  However, for a municipality, as opposed to an individual, to be liable the municipality must have been the "moving force" behind the constitutional injury.  <u>Canton v. Harris</u>, 489 U.S. 378, 388 (1989).  Essentially, a municipality is only liable when it has a policy or custom that caused the constitutional harm.  <u>Grazier v. City of Philadelphia</u>, 328 F.3d 120, 124 (3d Cir. 2003).

Here, Plaintiff has not pled any facts that the City of Brigantine had a policy or custom, or was in some other way, the moving force behind the alleged unlawful seizure.  Plaintiff alleges the Brigantine Police "judged this case themselves and then passed sentence by taking the vehicle back."  (Doc. 06-142, Compl. at ¶ 22D).  The Brigantine Police were not involved in the seizure.  The conclusory statement that the City of Brigantine "passed sentence" does not suggest any custom or policy that could have been a moving force behind the seizure.  Plaintiff did allege that the City of Brigantine Police Officers told Plaintiff she could seize the vehicle, however, these officers have not been identified and are not a party to this action  Moreover, the statements of unknown officers are not alleged to be the product of a custom or policy of the municipality.  Nowhere else in the Complaint does Plaintiff allege something that, if proved,

19

would show the City of Brigantine was the moving force behind the constitutional injury.  Accordingly, the City of Brigantine's motion for summary judgment will be granted.

Next, Defendants Hart and JAH moved for dismissal solely on the grounds of collateral estoppel.  Once again, this defense is not available.  Accordingly, Hart and JAH will be denied summary judgment on Plaintiff's claim.

Finally, the Cooper Levenson Defendants - the Cooper Levenson law firm, Mary Ann Benianati, Rona Zucker Kaplan, and Alan I. Kalb - move for dismissal.  Initially, the Cooper Levenson Defendants argued that Plaintiff's claim is essentially a claim of malpractice and, as such, the pleadings are deficient to state a claim.  (Doc. 06-142, No. 21).  The Cooper Levenson Defendants later joined the motions of the other defendants so as to assert the collateral estoppel defense.  (Doc. 06-142, Nos. 48, 49).  The Cooper Levenson Defendants also argued that the litigation privilege protects them from tort claims for actions taken in court or as a consequence of their representation of JAH and Hart.

The first two arguments may be dispatched quickly.  The Cooper Levenson Defendants may argue that Plaintiff asserts a malpractice claim, however, Plaintiff has unambiguously stated his claims as constitutional torts.  The Plaintiff is the master of the Complaint, Mints v. Educational Testing Services, 99 F.3d

20

1253, 1255-56 (3d Cir. 1996), and Defendants may not restate it
so as to more easily defeat it.  Second, this Court has
dispatched the collateral estoppel argument in its entirety.
Accordingly, the Cooper Levenson Defendants will not be dismissed
on these grounds.

The Cooper Levenson Defendants also argue that the
litigation privilege protects them from liability for their
actions.  The litigation privilege has its roots in the common
law and protects attorneys from facing liability for the words
spoken in the courtroom during judicial proceedings.  See Loigman
v. Township Committee of the Township of Middletown, 185 N.J.
566, 579-80 (2006).  Today the privilege extends to protect
counsel and parties from a host of tort claims based on
legitimate actions taken to advance a cause through litigation,
regardless of whether the allegedly tortious actions took place
inside a courtroom.  See Thomas v. Ford Motor Co., 137 F. Supp.
2d 575, 582 (D.N.J. 2001).  The privilege protects "any
communication (1) made in judicial or quasi-judicial proceedings;
(2) by litigants or other participants authorized by law; (3) to
achieve the objects of the litigation; and (4) that have some
connection or logical relation to the action."  Loigman, 185 N.J.
at 585 (quoting Hawkins v. Harris, 141 N.J. 207, 216 (1995)).

The chief difficulty for the Cooper Levenson Defendants lies
in Plaintiff's allegations that the Defendants conspired to

21

deprive him of his Fourth Amendment rights.  (Doc. 06-142, Compl. at ¶ 17).  A conspiracy to deprive someone of their constitutional rights has no valid or logical relation to litigation.  Cf. Hill v. Fauver, 342 N.J. Super. 273, 295-96 (App. Div. 2001) (holding litigation privilege does not protect malicious conduct such an improperly filed litigation).  Provided the Cooper Levenson Defendants were able to meet the other elements required to receive immunity from tort claims, they could not satisfy the fourth prong.  Accordingly, because the Cooper Levenson Defendants' alleged conduct is not logically related to the action they will be denied immunity under the litigation privilege.  They can not be dismissed on this ground.

Accordingly, for the reasons just discussed this Court's Order of February 2, 2007, will be vacated.  Plaintiff's claims against the City of Brigantine are dismissed with prejudice.  The Court now turns to Plaintiff's motion to file an amended complaint to identify the two Atlantic City police officers who assisted Hart in the seizure of the Pathfinder.  The Court previously denied Plaintiff's motion as moot, a conclusion that must now be reexamined.

Plaintiff's initial Complaint in number 06-142 pled fictitious names in place of those of the two Atlantic City police officers who assisted Hart's seizure of the Pathfinder. [Doc. 06-142, No.1].  Atlantic City entered an appearance and

filed an Answer in number 06-142 on March 3, 2006.  In July 2006,
Bumgarner filed an Amended Complaint in number 06-142,
identifying the two Atlantic City officers as John Miller and
Mark Pizzutillo.  [Doc. 06-142, No. 33].  A summons was issued
for Miller and Pizzutillo in October 2006, but proof of service
was never filed.  In January 2007, Bumgarner moved in the
original case, number 05-3900, for leave to file an Amended
Complaint that asserted all the claims brought in number 06-142
and identified officers Miller and Pizzutillo.  [Doc. 05-3900,
No. 64].

    A party may freely amend any pleading within 20 days after
it is served, beyond that a party must seek leave of the Court or
consent of the adverse party "and leave shall be freely given
when justice so requires."  Fed. R. Civ. P. 15(a).  Here, there
is no apparent grounds for denying Plaintiff's motion to file an
Amended Complaint to identify Defendants Miller and Pizzutillo.
The Pathfinder was seized in October 2006, and Atlantic City
filed an Answer to the Complaint, and was aware that the two
officers involved in the seizure were pled as fictitiously named
Defendants, no later than March 2007.  Moreover, Atlantic City
knew that Bumgarner sought to name Miller and Pizzutillo as
Defendants as early as July 2006. Finally, although Atlantic City
opposes Plaintiff's motion to file an Amended Complaint, Atlantic
City's sole objection is that the proposed amendments are futile

because Plaintiff is collaterally estopped from asserting his claims. The Court has fully addressed and rejected this argument. Accordingly, Plaintiff's motion for leave to file an Amended Complaint will be granted.


III. Conclusion

For the above reasons, this Court's Order of February 2, 2007 will be vacated.  Plaintiff's motion for leave to file an Amended Complaint will be granted.  The Amended Complaint will be deemed filed and served upon all Defendants.  Plaintiff's Complaint against the City of Brigantine is dismissed. Plaintiff's Complaint is construed as asserting a single claim for violation of Plaintiff's Fourth Amendment rights under 42 U.S.C. § 1983, against Defendants Atlantic City, Officer Miller, Officer Pizzutillo, the Cooper Levenson Defendants, JAH, and Hart.  All claims against all Defendants will continue on the consolidated docket number 05-3900.  Docket number 06-142 remains closed.  An appropriate Order will issue this date.


Dated: <u>June 7, 2007</u>                       <u>s/Renée Marie Bumb</u>
                                                RENÉE MARIE BUMB
                                                United States District Judge