[NOT FOR PUBLICATION]                    [Doc. Nos. 80, 88, 96 & 108]
               **IN THE UNITED STATES DISTRICT COURT**
                    **FOR THE DISTRICT OF NEW JERSEY**
                            **CAMDEN VICINAGE**

```
LARRY BUMGARNER,

             Plaintiff,
                                       Civil No. 05-3900 (RMB)
     v.

JANE ANN HART, et al.,                 OPINION

             Defendants.
```

Appearances:
    Larry Bumgarner
    205 Toulon Ave.
    Egg Harbor Township, NJ 08234
        Plaintiff, pro se

    Maureen Caryn Shay
    Fox Rothschild LLP
    1301 Atlantic Avenue
    Suite 400
    Atlantic City, NJ 08402
        Attorney for Defendants Jane Ann Hart and JAH Meeting
        Planners, Inc.

    Robert L. Loeffelad
    Seth Grossman & Associates
    453 Shore Road
    Somers Point, NJ 08244
        Attorney for Defendant Dandy.net

    Gary A. Devito
    Zarwin, Baum, Devito, Kaplan, Shaer & Toddy, PC
    Five Greentree Centre
    Suite 105
    Marlton, NJ 08053
        Attorney for Defendant City of Atlantic City

    Louis J. Nieldelman

```
Cooper Levenson
1125 Atlantic Avenue
Third Floor
Atlantic City, NJ 08401

Carmelo T. Torraca
Cooper Levenson
1125 Atlantic Avenue
Third Floor
Atlantic City, NJ 08401
```
    Attorneys for Defendants Mary Ann Benianati, Rona
    Zucker Kaplan, Alan I. Kalb, and Cooper Levenson April
    Niedelman & Wagenheim, P.A.

**BUMB,** United States District Judge:

This matter comes before the Court upon four motions pending in the above captioned case, itself a consolidated docket of two actions, [Docs. 05-3900 and 06-142], filed by Plaintiff, pro se, Larry Bumgarner.  In the first action, [Doc. 05-3900], Plaintiff complains of copyright infringement by his former paramour, Defendant Jane Ann Hart, his former employer, Defendant Jane Ann Hart Meeting Planners, Inc., and an internet service provider, Dandy.net.  In the second action, [Doc. 06-142], now consolidated with and under the above caption, Plaintiff complains his car was unlawfully seized, in violation of his Constitutional rights, by Defendants Jane Ann Hart and Jane Ann Hart Meeting Planners, Inc., the City of Atlantic City and city police officers John Miller and Mark Pizzutillo (under whose authority Jane Ann Hart seized the vehicle), and Jane Ann Hart's previous counsel Cooper Levenson April Niedelman & Wagenheim, P.A., a law firm, and the individual attorneys, Mary Ann Benianati, Rona Zucker Kaplan, and

2

Alan I. Kalb (all of whom allegedly conspired to unlawfully seize the vehicle from Plaintiff).  At the time of the seizure of the car, Defendants Jane Ann Hart and Jane Ann Hart Meeting Planners, Inc., had made the right to possess the car an issue in the first action.

Defendant Dandy.net now moves for summary judgment on Plaintiff's copyright claim.  Defendant Jane Ann Hart and Jane Ann Hart Meeting Planners, Inc., join that motion and bring their own motion for summary judgment on Plaintiff's copyright and Constitutional claims.  Defendant City of Atlantic City moves to dismiss Plaintiff's Constitutional claims.  Finally, Plaintiff moves to dismiss counterclaims alleged by Defendants Cooper Levenson April Niedelman & Wagenheim, P.A., Mary Ann Beninati, Rona Zucker Kaplan, and Alan Kalb.

I.   Statement of Facts

The following facts are drawn from the record and viewed in a light most favorable to Plaintiff, Larry Bumgarner ("Plaintiff" or "Bumgarner").

Plaintiff and Defendant Jane Ann Hart ("Hart") began a personal relationship in May 2001, and began living together in early 2002.  In October 2001, Hart, who had been in the meeting planning business since 1987, incorporated Jane Ann Hart Meeting Planners, Inc. ("JAH").  Bumgarner prepared the incorporation

documents but never had any ownership interest in the corporation.  Bumgarner claims that Hart promised to make him a half owner but admits that a formal agreement was never reached.  After the formation of JAH, Bumgarner did work on behalf of the company such as bookkeeping, sales lead research, and assisted with sales calls.  Throughout his relationship with Hart and JAH, Bumgarner proposed numerous contract terms to formalize the business relationship but the parties never reached agreement on terms.

In 2002, Hart and Bumgarner agreed that Bumgarner should create a website for JAH.  Plaintiff set about creating a website using books on webdesign and programing purchased by the company.  The website, while a work in progress, was published and live on the internet by early 2002.  Bumgarner and Hart collaborated on the website with Hart supplying content such as photographs, tasks lists, budget analysis, client lists, and other marketing materials.

During this time JAH and Hart paid all of Bumgarner's living expenses.  In addition to the usual living expenses Bumgarner had use of a 2003 Nissan Pathfinder.  JAH leased the vehicle from Nissan and paid for insurance and gas.  Bumgarner had unlimited and exclusive use of the car.  Hart claims these expenses were paid for in exchange for Bumgarner's work on behalf of JAH.  Yet both agree there was no formal agreement between them.  Moreover,

Bumgarner and Hart continued an intermittent personal relationship while Bumgarner worked for JAH.

In late 2004, JAH obtained a client, Biacore Corporation, who hired JAH to create a web-based registration system for a planned trade show.  Hart asked Bumgarner to create the system.  The record is unclear of the exact date but, sometime in 2005 Bumgarner finished a website through which people could register to attend Biacore's trade show.  The page included an online registration form and a database that processed payment of the registration fee.  The system began processing registrations on June 1, 2005.

In March 2005, Hart and Bumgarner ended their professional and personal relationship.  Bumgarner moved out of the condominium he was sharing with Hart.  Immediately afterward, Plaintiff proposed several employment contracts to Hart, none of which were accepted.  Plaintiff claims that at some point, exactly when is unclear, Hart promised him continued use of the car so long as JAH retained a particular client, Charter Partners, Inc.  Yet, Bumgarner submitted evidence, from the contract negotiations, that Bumgarner "had not agreed to anything."  (See Pl.'s Compl. ¶ 25).

As the relationship between Hart and Bumgarner deteriorated, Hart took steps to block Bumgarner's access to JAH's websites and e-mail systems.  When Bumgarner discovered this he made phone

5

calls and sent letters to Hart, JAH's clients, and the new website hosting service, Dandy.net.  In these communications Bumgarner claimed to own the copyright to the websites and insisted that control over the sites be returned to him. Bumgarner's efforts were to no avail and, on August 5, 2005, he filed a Complaint in this Court alleging one count of copyright infringement.  At this time, only JAH, Hart, and Dandy.net remain Defendants to this claim.

A couple weeks later, on August 15, 2005, Bumgarner sought to copyright the work that was the subject of his Complaint. Bumgarner filed two copyright registrations.  The first registration was for the JAH website, www.jahart.com.  The second was for the registration form and databases for the Biacore trade show.  The Copyright Office registered Bumgarner's copyright for the JAH website effective October 12, 2005.  The registration listed the date of first publication as January 9, 2005.  The Copyright Office rejected the second registration for the Biacore trade show registration form and databases.

While these events were transpiring Bumgarner continued to drive the car leased and paid for by JAH.  Hart made a demand for the car but was rebuffed.  On September 13, 2005, Hart issued Plaintiff an ultimatum: return the Pathfinder or assume responsibility for the lease payments and insurance premiums by September 19, 2005; Plaintiff responded that he would not return

the car.  On the day of the deadline Defendants JAH and Hart filed an Answer to Bumgarner's Complaint and included a Counter-Claim to reclaim possession of the car.  Hart then, at the suggestion and with the assistance of her counsel at Cooper Levenson April Niedelman & Wagenheim, P.A. (Mary Ann Benianati, Rona Zucker Kaplan and Alan I. Kalb) (collectively "Cooper Levenson" or the "Cooper Levenson Defendants"), simultaneously sought relief in state court.  Hart went to the City of Brigantine Police Department and reported the car stolen.  Hart and the Cooper Levenson Defendants never disclosed that the car was already the subject of litigation in this Court.

The City of Brigantine issued a summons for Bumgarner to appear in municipal court to answer Hart's charges.  Prior to the appearance date, however, Hart located the car in the City of Atlantic City.  Hart called the City of Atlantic City police department which dispatched Officers John Miller and Mark Pizzutillo.  Bumgarner returned to the car and Miller and Pizzutillo demanded he turn the keys over to Hart on the basis of the summons issued by the City of Brigantine Municipal Court. Bumgarner complied and Hart took possession of the car.  She brought the car's contents to the Cooper Levenson Defendants who sent an itemized list to Bumgarner and invited him to retrieve them at their office.  Hart dismissed her counterclaim to possession of the car on October 17, 2005.

These events inspired Bumgarner to file a second Complaint in this Court. This Complaint, originally docketed as number 06-142 and now consolidated with this action, alleged a violation of his Fourth Amendment right to be free from unreasonable seizures. Bumgarner named Hart, JAH, Hart's counsel the Cooper Levenson Defendants, the City of Atlantic City, the City of Brigantine, and Atlantic City officers Miller and Pizzutillo as Defendants. This Court previously granted the City of Brigantine judgment on Bumgarner's claims.

Currently before the Court are four motions. These include a motion for summary judgment by Defendant Dandy.net, [Doc. 05-3900, No. 80], a motion for summary judgment by Defendants Hart, and JAH, [Doc. 05-3900, No. 88], a motion to dismiss by City of Atlantic City, [Doc. 05-3900, No. 96], and a motion to dismiss the Cooper Levenson Defendants' Counter-Claims by Plaintiff Bumgarner [Doc. 05-3900, No. 108].

II.  Standard

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1] Fed. R. Civ. P. 56(c). In deciding whether there is a

---

[1] The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless

disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

III. Analysis

    Atlantic City's Motion

Atlantic City moves to dismiss on the grounds that Plaintiff has neither alleged facts nor produced evidence that would support municipal liability for the acts of Atlantic City Police Officers John Miller and Mark Pizzutillo. A municipality is liable for the constitutional torts of its employees only if the tortious conduct is the product of a policy or custom of the

---

of which party ultimately would have the burden of persuasion at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

municipality.  <u>Grazier v. City of Philadelphia</u>, 328 F.3d 120, 124 (3d Cir. 2003).  Atlantic City points out that Plaintiff fails to allege facts or provide the evidence of a municipal policy or custom that led to Officers Miller and Pizzutillo's allegedly unlawful seizure of the car.

Plaintiff claims this Court has already rejected this argument.  To the contrary, this Court dismissed Defendant City of Brigantine on precisely this ground.  Atlantic City, however, had not previously raised this argument in defense of the claims against it.  It does so now.  Atlantic City is correct that Plaintiff has not alleged facts that a policy or custom contributed to the alleged unlawful seizure of Plaintiff's vehicle.  A reading of the Complaint is devoid of any such allegation.  Accordingly, Defendant Atlantic City's motion will be granted and Plaintiff's claim against the City dismissed.

<u>Dandy.net's Motion</u>

Dandy.net argues first that Plaintiff's claim for copyright infringement is barred.  Under 17 U.S.C. § 411, "no action for infringement . . . shall be instituted until registration of the copyright claim has been made . . . ."  Plaintiff brought his copyright suit on August 5, 2005, before he applied for a copyright on August 17, 2005, and received a copyright certificate effective October 12, 2005.  Dandy.net characterizes Plaintiff's failure to register his copyright first as a

10

jurisdictional defect that bars the claim.

However, Plaintiff sought to file an Amended Complaint on January 4, 2007, which included the copyright claims by reference. [Doc. No. 100, Ex. A]. This Court permitted the filing of the Amended Complaint on June 7, 2007. Because the filing of an Amended Complaint supersedes the earlier Complaint, International Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977), and post-dates the registration of the copyright, Section 411 should not bar the claim. This would seem to conflict with the time-of-filing rule which requires that, "jurisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit." Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 575 (2004) (quoting Conolly v. Taylor, 27 U.S. 556, 565 (1829). However, the time-of-filing rule applies to subject matter jurisdiction and not the statutory requirements of a cause of action. Id. at 574.

This Court has original jurisdiction over claims that arise under federal law. 28 U.S.C. § 1331. There is no dispute that Plaintiff's claim arises under federal copyright law, 17 U.S.C. § 101 - et seq. Thus, this Court has jurisdiction over Plaintiff's claim. Section 411 is a prerequisite to bringing a valid claim. Likewise, the section presents a defense against a claim for infringement made prior to registration of the copyright. The

failure to register under section 411 before filing a complaint for infringement does not eliminate this Court's jurisdiction over matters arising under federal law.  Although Dandy.net characterizes the defect as jurisdictional in nature, in truth the defect is in the claim not in the jurisdiction; the time-of-filing rule would not apply here.  To that extent, the Amended Complaint properly cures the deficient claim.  Accordingly, Dandy.net's motion for judgment on this ground is denied.

Defendant also seeks judgment in its favor on any claim by Plaintiff for actual damages.  Plaintiff's Complaint includes a prayer for relief in the form of actual damages.  Defendant Dandy.net argues that Plaintiff has produced no evidence of actual damages.  In addition, it asserts, Plaintiff has since dropped any claim to actual damages and only seeks statutory damages.  (See, e.g., Dandy.net's Br., Ex. J (Pl.'s Answers to Interrogatories)).  Indeed, Plaintiff, in his opposition, does not dispute this and repeats his prayer for statutory damages only.  (Pl.'s Opp. [Doc. 91] at 3, ¶ 5; see also, id. at 7, ¶ 49, and id. at 12, ¶ 66.2).  Accordingly, Defendant Dandy.net will be granted summary judgment on Plaintiff's claim for actual damages.

Defendant next argues that it should be granted judgment in its favor on Plaintiff's claim for statutory damages.  Statutory damages are unavailable where an "infringement of copyright commenced after first publication of the work and before the

12

effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412(2). According to Plaintiff's copyright certificate, the website was first published on January 9, 2005; the forms and database was first published on January 15, 2005. Plaintiff claims his copyright was infringed beginning "on or about July 14, 2005." (Pl.'s Compl. ¶ 36). The Copyright Office registered the copyright for the website effective October 12, 2005. Therefore, Dandy.net argues, Plaintiff is not entitled to statutory damages because the alleged infringement commenced after publication but before registration, and Plaintiff did not register his copyright within three months of first publication.

Plaintiff counters that the copyrighted work was first published on June 1, 2005, when the site was first used to process transactions for the Biocore trade show. Plaintiff conflates two different works, one copyrighted and the other not. It is undisputed that the website www.jahart.com was first published as early as 2002 but certainly no later than January 9, 2005. It was in late 2004 when Plaintiff was asked to produce an online registration form and database for the Biacore trade show. Plaintiff submitted two copyright registrations, one for the website and a second for the online registration form and database. Only the first, the website www.jahart.com, was registered and with a first published date of January 9, 2005.

The copyright office rejected the application for the registration form and database.  Thus, Plaintiff's evidence that the registration form and database were first published on June 1, 2005 is irrelevant.  It is only the first publication of the registered work, the website www.jahart.com, that is of consequence.

It is now apparent that Dandy.net is correct that Plaintiff's claim of statutory damages is barred by 17 U.S.C. § 412.  Statutory damages for an infringement that commences after publication but prior to copyright registration is available only where a plaintiff registers the work within three months of publication.  17 U.S.C. § 412(2).  Plaintiff never received a copyright registration for the Biacore trade show registration form and database; that work cannot be a basis of an infringement claim.  <u>Id.</u>  Plaintiff received a copyright effective October 12, 2005, for the website only.  The application was filed on August 15, 2005.  The site was first published on or before January 9, 2005.  Plaintiff did not register, nor apply, until well after three months after first publication.  This is an undisputed fact that will not change with further discovery. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for statutory damages.

Plaintiff could now receive only equitable relief on his claim.  However, the undisputed record states that the website is

no longer on the internet.  Therefore, Plaintiff's claim to equitable relief in the form of an injunction is moot. Accordingly, Defendant Dandy.net is entitled to summary judgment on Plaintiff's Complaint because Plaintiff cannot recover statutory damages or equitable relief (and concedes any claim for actual damages).

<u>Jane Ann Hart and JAH Meeting Planners, Inc.'s Motion</u>

Jane Ann Hart and JAH Meeting Planners, Inc. (collectively "Hart") joined Dandy.net's motion for summary judgment.  [Doc. 81].  Hart is therefore also entitled to judgment on Plaintiff's copyright claim.  In the alternative, Hart argues that Plaintiff's claim fails because Hart was a co-author of the work. Hart further argues that Plaintiff's contractual right to the Nissan was properly terminated.

Hart's additional argument for judgment in her favor is unopposed and warrants brief discussion.  Hart asserts that the website was a joint work between both Hart and Plaintiff.  "The authors of a joint work are co-owners of copyright in the work," 17 U.S.C. § 201(a), and each is entitled to distribute the joint work.  <u>Baker v. Robert L. Lappin Charitable Trust</u>, 415 F. Supp. 2d 473, 487 (S.D.N.Y. 2006).  Moreover, a joint copyright holder cannot bring an infringement action against the co-author. <u>Weissmann v. Freeman</u>, 868 F.2d 1313, 1318 (2d Cir. 1989).  Hart supplied pictures, client and task lists, marketing materials and

15

more for the website.  Hart states that it was the intention of Plaintiff and Hart that the website be the product of their co-authorship.

Plaintiff does not dispute these facts.  Plaintiff, in his opposition of July 9, 2007, argues only that the copyright registration vests him with sole copyright over the website.  Plaintiff's copyright registration lists only himself as the author of the work.  He does not dispute the evidence presented by Hart that the work is in fact the product of both their efforts; he does not claim to be the sole author of the work.  Hart's contributions to the work are a material fact relevant to the copyright of a work.  Baker v. Robert I Lappin Charitable Foundation, 415 F. Supp. 2d 473, 487 (S.D.N.Y. 2006).  The omission of material facts from a copyright application "constitutes grounds for holding the registration invalid and incapable of supporting an infringement action." Masquerade Novelty v. Unique Industries, Inc., 912 F.2d 663, 667 (3d Cir. 1990).  Here, Plaintiff omitted mention of the undisputed material fact that Hart co-authored the work.  On the record before the Court Plaintiff has not put forward any evidence to refute Hart's claim of co-authorship and, consequently, the invalidity of the copyright registration.  Moreover, because the evidence before this Court shows that Hart is a co-author of the work, and is thus entitled to distribute the joint work,

16

Plaintiff's claim of infringement fails. Again, these facts are not disputed by Bumgarner, nor does he allege facts inconsistent with Hart's evidence. Accordingly, Defendants are entitled to judgment on Plaintiff's copyright claim.

Hart also seeks judgment on Plaintiff's claims arising out of the seizure of the vehicle. Plaintiff has vehemently insisted that he had a contract with Hart for indefinite use of the Pathfinder. Although Plaintiff does not assert a breach of contract claim, the existence of a valid contractual right to the possession and use of the vehicle is a prerequisite for Plaintiff's Constitutional claims for unlawful seizure. See Brown v. Muhlenberg Township, 269 F.3d 205, 209 (3d Cir. 2001) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)) (stating that "meaningful interference with an individual's possessory interest in that property" amounts to a seizure). It is Hart's contention that a contract as alleged by Plaintiff is terminable at will. Hart seeks, therefore, dismissal of Plaintiff's claims based on the seizure of the vehicle because he lacked a valid possessory interest once the contract was properly terminated.

Hart argues that Plaintiff's claim is premised on a contract for indefinite employment and use of the vehicle during that employment. Hart argues such indefinite employment contracts are at will, Savarese v. Pyrene Manufacturing Co., 9 N.J. 595, 601

17

(1952).  Plaintiff argues, however, that the contract was not one for employment with concomittant use of the vehicle.  Rather, Plaintiff has pled that the contract was specifically for use of the vehicle itself.  (See Pl.'s Compl. ¶ 22 (Hart "promised that as long as she had Charter Partners, Inc. as a client Plaintiff would be paid and could use the car.")).

Plaintiff claims he had a contract to possess the vehicle so long as Hart retained a particular client.  Plaintiff has made allegations that he had a contract that granted him a possessory right to the car.  Discovery has not yet concluded.  [Doc. No. 114 (setting discovery deadline of October 1, 2007)]  "It is a first principle of federal civil procedure that litigants 'are entitled to discovery before being put to their proof.'"  Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004) (quoting Bennett v. Schmidt, 153 F.3d 516, 519 (7th Cir. 1998)).  Plaintiff is entitled to finish the discovery process to obtain evidence of the contract he alleges.  At this stage of the proceedings summary judgment on this claim is inappropriate and will not be considered.

### Bumgarner's Motion

The final motion is Plaintiff Bumgarner's motion to dismiss the Counter-Claims of the Cooper Levenson Defendants.  The Cooper Levenson Defendants have filed five Counter-Claims against Plaintiff for his actions in pursuing this litigation.  Although

18

Plaintiff styles his motion as a motion to dismiss it relies on several pieces of evidence that lie outside the pleadings. Where a motion relies on evidence outside of the pleadings it should be treated as a motion for summary judgment. Fed. R. Civ. P. 12(b). As already noted, summary judgment on a claim is inappropriate where discovery is ongoing. <u>Alston</u>, 363 F.3d at 233 n.6. Discovery on the issues raised by the Cooper Levenson Defendants in their Counter-Claims, and by Plaintiff's motion,[2] is not complete. Accordingly, Plaintiff's motion will not be considered at this time and will be denied without prejudice.

IV. Conclusion

    For the reasons discussed above, Defendant City of Atlantic City's motion to dismiss will be granted; Defendant Dandy.net's motion for summary judgment will be granted; Defendants Jane Ann Hart and JAH Meeting Planners, Inc.'s motion for summary judgment will be granted as to Plaintiff's copyright claim and denied as

---

[2] In his motion, Plaintiff makes some vague allegations that the Cooper Levenson's conduct, including presumably the Counter-Claims, is for impermissible ends. (<u>See, e.g.</u>, Pl.'s Br. at ¶ 16 (referring to allegations of "cover[ing] up" constitutional abuses and "fix[ing] a federal action.")). The Court is mindful that litigation "for the purpose of harassing or maliciously injuring a person," Model Rules of Professional Conduct R. 3.1 cmt (1983), may be a violation of New Jersey's Rules of Professional Conduct. N.J. Rules of Prof'l Conduct R. 3.1 and R. 3.2; <u>see also</u>, Model Rules of Prof'l Conduct 3.1 cmt 1 (2002). The Court is confident that counsel in this case will litigate these issues with the utmost regard for their obligations to their clients, the Court, and their profession.

to Plaintiff's Constitutional claim; Plaintiff's motion to dismiss the Cooper Levenson Defendants' Counter-Claims will be denied without prejudice.  An appropriate order will issue this date.


Date: August 30, 2007                    s/Renée Marie Bumb
                                         RENÉE MARIE BUMB
                                         United States District Judge